UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

DEC 20 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

| | |
|---|---|
| In re:<br><br>Ana Beatriz Betancourt<br><br>Debtor(s).<br><br>Matthew Ballmer<br><br>Plaintiff(s),<br>v.<br><br>Ana Beatriz Betancourt<br><br>Defendant(s). | Case No.: 1:10-bk-14588-GM<br><br>Adv No:    1:12-ap-01221-GM<br><br>Chapter 7<br><br>**MEMORANDUM OF OPINION AFTER TRIAL**<br><br>Date: December 3, 2013<br>Time: 1:30 p.m.<br>Courtroom:   303 |

On October 22, 2003, Paul Ballmer filed suit against La Fe, Inc., seeking damages for breach of contract.[1] The trial took place on December 13, 2004. Ana Betancourt, who is or was the sole or majority shareholder of La Fe, failed to appear and judgment was granted to Ballmer after prove-up. The judgment in the amount of $85,626.73 was entered on January 28, 2005 (Ex. 32).[2]

Betancourt filed for relief under chapter 7 of the bankruptcy code on April 20, 2010 and on June 29, 2012 Matthew Ballmer (the son and assignee of Paul Ballmer) filed this adversary proceeding seeking to have the judgment declared non-

---

[1] Los Angeles Superior Court case GC032861.
[2] The Court also takes judicial notice of the case information on the website of the Los Angeles Superior Court, http://www.lasuperiorcourt.org/civilcasesummarynet/ui/casesummary.aspx?CT=CI.

-1-

dischargeable under 11 USC §§523(a)(4) and (a)(6).[3] The claim under §523(a)(4) was withdrawn at the time of trial.[4] The documents in evidence show the attached timeline. The question is whether these transfers were made so as to prevent Ballmer from collecting on his judgment and fall under the definition of willful and malicious and are therefore actionable under 11 USC §523(a)(6).

There are some 13 parcels which are in question in this case. Because they are inconsistently identified - some by lot number and some by legal description – the Court will use the assessor's parcel numbers, which appear on virtually all documents. The parcels break into three groups: assessor's parcel number 4444-30-07 (referred to as "30-7"), assessor's parcel number 4444-30-10 (referred to as "30-10"), and 11 lots that comprise assessor's parcels that have as their middle digits ##027, 028, or 029 (collectively referred to as "027-029").

<u>Parcels 30-7 and 30-10</u> were those in which Robert Rein, an attorney who sometimes assisted Betancourt, purchased or attempted to purchase an interest. He is the sole owner of Racada Corp. These two parcels are referenced in some documents as "the boot" because of their shape. Betancourt was attempting to do a lot-line adjustment as to these parcels.

A reference to this lot-line adjustment occurs as early as 1994, when Calvin Larson (then Debtor's boyfriend and now her husband) was in the process of buying lots 30-7 and 30-10 from parties unrelated to this case (Ex. B). Exhibits A, B, C, E, G, and H show that the sales contract was signed in 1994 and the escrow opened at that time with a sales price of $80,000 for the two lots. There were delays in closing, first

---

[3] This chapter 7 case was immediately preceded by Betancourt's chapter 13 filing (1:10-bk-10129-GM), which was dismissed by order entered on February 18, 2010. Matthew Ballmer was not added to the Debtor's schedules or mailing list until May 15, 2012 and this adversary complaint followed on June 29, 2012.
[4] Claimant's Trial Brief, which is not on the docket, but was presented at time of trial.

because Larson did not qualify for a loan and then because the sellers had some issues with delivering clean title.  There was also a timing agreement to delay transfer of one parcel until the lot line was adjusted.[5]

The escrow still had not closed when, on February 10, 1995, Larson gave an instruction that title was to be vested in La Fe, Inc. rather than in himself (Ex. E).  According to Betancourt, this was in order to get a loan to purchase these lots.  However she also testified that it was Larson who paid the purchase price and taxes on these two lots and thus La Fe owed him $70,000.[6]

There is no document showing the actual transfer of lots 30-7 and 30-10 from the original sellers to La Fe, but on October 2, 2002 La Fe signed two grant deeds (one for each lot) which transferred La Fe's interest to Robert Rein (lot 30-7) and to Racada (lot 30-10) (Ex. 17, 18).

Plaintiff argues that these deeds may have been back-dated, but the evidence does not support this.  Both deeds were notarized by David Gibson and his notary stamp shows that his commission would expire on March 31, 2003.  However, when he notarized Exhibit 20 in 2004, his notary stamp had an expiration date of March 31, 2007.  Although there was testimony that Gibson ran the escrow company that Betancourt used, there is no evidence or inference that he would have participated in back-dating these grant deeds.

Therefore the Court finds that Betancourt, on behalf of La Fe, executed the grant deeds of lots 30-7 and 30-10 on October 2, 2002, a year before the Ballmer lawsuit was filed.

Parcel 30-7 was transferred to Rein by LaFe by grant deed signed on October 2,

---

[5] The Court cannot tell from the exhibits whether the delay was for parcel 30-7 or for parcel 30-10.
[6] This seems to be irrelevant, but is an interesting part of the background of the transfers of these properties.

2002. This was recorded on July 22, 2004, almost six months before the trial and judgment (Ex. 17). Rein paid $200,000 for this parcel. He speculates that the delay in recording was because he paid for the property over time. This parcel never returned to Betancourt, La Fe, or Larson and is not part of any alleged scheme.

Parcel 30-10 was transferred to Racada by grant deed also signed on October 2, 2002 (Ex. 18). This grant deed was recorded on December 20. 2004, as was a trust deed from Racada to Larson. The trust deed had been signed one week earlier on December 13, 2004, the same day as the state court trial at which Betancourt failed to appear. The trust deed states that it is to secure an obligation to Larson of $100,000 that was for part of the purchase price (Ex. 19).

Title remained in this status until early 2007, when two documents were signed and recorded by which Betancourt attempted to become the beneficiary of the trust deed. For some reason, unexplained by Rein or Betancourt, Racada assigned the deed of trust to Betancourt, although Larson was the beneficiary of the trust deed and Racada was its maker (Ex. 22). On the same date that the Racada assignment was dated (though it was not actually signed until ten days later), Betancourt signed a substitution of trustee stating that she is the present beneficiary of the trust deed (Ex. 23). Then there is a gap.

On July 23, 2008 a trustee's deed upon sale was recorded transferring title to Betancourt for a bid of $124,130.64, which the Court finds was a credit bid of the balance owing on the trust deed (Ex. 28). However, there is no document showing how the trust deed was transferred from Larson to Betancourt, since the attempted assignment from Racada had no legal significance. A year later Betancourt gave a grant deed to herself and Larson, stating that these are the same parties who continue

Case 1:12-ap-01221-GM    Doc 34    Filed 12/20/13    Entered 12/20/13 14:10:52    Desc
Main Document    Page 5 of 17

to hold the same proportionate interest in the property (Ex. 29).

Rein testified that he only purchased one property from La Fe, although he had made an agreement to buy another one, too. From that point he seemed to be confused because he stated that he paid $100,000 cash for it, but signed the trust deed to Larson to secure the entire purchase price. He also said that he assumes that the escrow did not close timely because he paid for it over time.

There are missing documents to support the contention that anything was paid for the transfer of parcel 30-10 from La Fe to Racada or that Larson ever loaned Rein/Racada any amount for purchase of this property. Rein's testimony is confused, but he is clear that he only purchased one property from La Fe and that while he made an agreement to buy another property, that agreement was never consummated.[7] At first he identified parcel 30-10 as the one that he purchased, but later he clarified that it was parcel 30-7.[8]

The documentary evidence supports that Rein intended to purchase parcel 30-10, but never paid for the purchase of that parcel. The grant deed from La Fe to Racada stated that the full value of the property that was conveyed was $100,000 and the deed of trust from Racada to Larson is in the amount of $100,000 (Ex. 18, 19).[9] Because the grant deed (Ex. 18) was mailed back to him from the County Recorder, Rein had to have been aware of the transaction and appears to have served as a "straw man" for Betancourt to remove the property as an asset of La Fe's. At worst he was part of this scheme and at best he was a willing dupe for it. It is not surprising that nine years later he would be unclear as to the actual facts concerning parcel 30-10, but there

---

[7] FTR recording, 12/3/13, 1:35 p.m.
[8] FTR recording, 12/3/13, 1:51 p.m.
[9] The $100,000 value is arrived at through the calculation of the documentary transfer tax on exhibit 18, which was $110 and is determined as 1.1% of the value transferred – hence a $100,000 value.

is no reason to believe that his memory was flawed when he testified that he only consummated the purchase of one property. And the evidence is clear that the property that he actually purchased and paid for is parcel 30-7.

On the Defendant's side, there is no evidence showing that the trust deed (Ex. 19) was actually assigned by Larson to Betancourt or that she paid anything for the purported assignment. There is no evidence that La Fe every received any money or other consideration for the transfer of parcel 30-10 to anyone. Thus the Court finds that Rein/Racada never paid anything for this transfer.

Parcels 027-029

Betancourt testified that she originally purchased this group of properties in order to develop them. La Fe was created in 1983 for the purposed of holding these lots. At some point in time, Larson had loaned Betancourt or La Fe money, which was used for the purchase, taxes, etc. on some of the lots. Whether to pay back the loan or not, on March 27, 1998, Betancourt (on behalf of Le Fe) signed a grant deed to Larson, presumably for the purchase price of $100,000 (Ex. 21). This was not recorded until December 20, 2004. The December 14, 2004 quitclaim deed to Larson states: "This conveyance passes bare title. The transfer tax is being collected in the deed recording concurrently from LA FE, INC in the amount of $110.00." (Ex. 20). The quitclaim deed was also recorded on December 20, 2004. There is no documentation as to how La Fe took title; why it was transferred to Larson in the first place (1998); why the grant deed was not recorded for over six years; and how, on December 14, 2004, Betancourt had any interest to be transferred. There is no evidence that Larson paid anything to La Fe or to Betancourt for this transfer. This is also supported by the fact that in 2007 Larson transferred the property back to Betancourt as a gift (Ex. 24).

Looking at the whole picture, there were a group of deeds that were unrecorded and possibly undelivered. These were originally created in the late 1990s and up through 2002. Then, suddenly, on December 20, 2004 – one week after the state court trial – they were recorded transferring all of La Fe's interest in eleven parcels to Larson (Ex. 21). The only remaining parcel was transferred to Racada (Ex. 18) and simultaneously a trust deed was recorded on behalf of Racada giving a lien to Larson on that parcel (Ex. 19). The only one of the thirteen properties which fell out of the pattern was the one transferred to Rein in July 2004, for which he paid $200,000 (Ex. 17).

Reviewing the events of December 2004 shows a flurry of activity concerning these properties:

12/9/04 – a final status conference was held in the Superior Court and it was clear that the matter was going forward to trial in a few days

12/10/04 – a trust deed was prepared for parcel 30-10 from Racada to Larson

12/13/04 – Rein signed the trust deed for parcel 30-10

12/13/04 – Trial was held and became a default prove-up due to the non-appearance of the defendant (La Fe)

12/14/04 – Betancourt signed the quitclaim deed from her to Larson on parcels 027-029

12/20/04 – Grant deed and quitclaim deed recorded on parcels 027-029

12/20/04 – Grant deed and deed of trust recorded on parcel 30-10

This demonstrates the intent to remove any ownership interest in real property from La Fe so as to prevent Ballmer from placing a judgment lien in his favor.

LEGAL ANALYSIS

There was some argument that the transfer of these lots did not actually occur until December 2004 because the deeds were not delivered until that time.  This is not critical to the analysis since there is no action in this Court to recover the property and Los Angeles Superior Court case BC480647 was never removed.[10]  The complaint before this Court deals solely with 11 USC §523(a)(6).

In an action under §523(a) the Plaintiff bears the burden of proof on all issues by preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287 (1991).  "The burden of showing something by a 'preponderance of the evidence,' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'"  Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993).

Plaintiff's §523(a)(6) claim is for" willful and malicious injury."  The requirements of "willful" and "malicious" are considered separately.  Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002).  "A 'willful' injury is a 'deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'" Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008)(quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original)).  "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause." Ormsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1207 (9th Cir.

---

[10] The docket on LASC Case BC480647 shows that Ballmer filed a complaint for fraud against Betancourt and Larson on 3/15/12, Larson filed an answer, and that the last status conference was on 6/5/13. Presumably this is an action for fraudulent transfer.  The docket notes that there is a bankruptcy pending and states that the case was removed to federal court. But to the extent that it seeks a judgment for fraudulent transfer, no removal took place.  So it remains in the Superior Court and the issue of whether this meets the legal definition of a fraudulent transfer is not before the bankruptcy court.

Cal. 2010).

There is evidence that the two sets of parcels that were transferred in December 2004 had equity in them.  Parcels 30-7 and 30-10 were originally purchased as a unit for $70,000 or $80,000.  Parcel 30-7 was transferred to Rein for $200,000 and Parcel 30-10 shows a documentary transfer tax equivalent to $100,000 (Ex. 18) at the time of the recording of the grant deed from La Fe to Racada [although this actually was never paid (thus the trust deed for that same amount from Racada to Larson) (Ex. 19)].  There is no evidence of any liens or other encumbrances on parcels 027-029 when they were transferred from La Fe to Larson by deed recorded in December 2004 and that deed shows a transfer tax that values the property at $100,000.  As noted above, there is no evidence that Larson actually paid this amount or any amount for 027-029.

Because valuable assets of La Fe were transferred without consideration so as to prevent Ballmer from collecting on his judgment, this was a willful injury.

It was also a malicious injury.  Transferring the property without adequate consideration in order to prevent a creditor from obtaining a judgment lien is a wrongful act.  This was done intentionally and such an act necessarily caused injury.  And no just cause existed that would excuse this wrongful action.

CONCLUSION

Plaintiff has borne his burden of establishing his case by preponderance of the evidence.  For that reason, the Court will order that Matthew Ballmer shall have judgment against Ana Betancourt in the amount of $75,440.84 plus interest at the federal judgment rate from date of entry of the judgment in this adversary proceeding.  Upon entry of discharge or abandonment by the Trustee of the fraudulent transfer claim,

1  Ballmer may proceed as to fraudulent transfer in his action in Los Angeles Superior
2  Court case BC480647.
3     ###

Date: December 20, 2013

Geraldine Mund
United States Bankruptcy Judge

## ATTACHMENTS
Chronological Order by Parcel
Chronological Order

## CHRONOLOGICAL BY PARCEL

| Ex. | date | document | parcel | amount paid | From | To | Comments | Notary/ Expiration Date |
|---|---|---|---|---|---|---|---|---|
|  | 10/22/2003 | Ballmer v. Betancourt case filed in the Los Angeles Superior Court |  |  |  |  | GC032861 |  |
|  | 3/10/2004 | case management conference in Superior Court case |  |  |  |  | GC032861 |  |
|  | 6/16/2004 | post-mediation status conference in Superior Court case - mediation to be completed by 6/16/04 |  |  |  |  | GC032861 |  |
|  | 12/9/2004 | final status conference in Superior Court case |  |  |  |  | GC032861 |  |
| 32 | 12/13/2004 | state court trial |  |  |  |  |  |  |
| 32 | 1/28/2005 | judgment filed for $85,626.73 |  |  |  |  |  |  |
| 21 | 3/27/1998 | grant deed signed | 027-029 | $100,000 | La Fe | Larson | does not include 30-7 or 30-10 | Hernandez - 3/3/00 |
| 20 | 12/14/2004 | quitclaim deed signed | 027-029 |  | Betancourt | Larson | does not include 30-7 or 30-10; is passing bear title and tax collected on deed recording concurrently from La Fe | Gibson – 3/31/07 |
| 20 | 12/20/2004 | quitclaim deed recorded | 027-029 |  |  |  |  |  |
| 21 | 12/20/2004 | grant deed recorded | 027-029 |  |  |  |  |  |
| 24 | 5/7/2007 | grant deed signed | 027-029 | gift | Larson | Betancourt | does not include 30-7 or 30-10 | Dingle – 3/25/10 |
| 24 | 5/10/2007 | grant deed recorded | 027-029 |  |  |  |  |  |
| A | 2/4/1994 | real estate purchase contract | 30-7 & 30-10 | $80,000 | Goodwin, et. Al sellers | Larson, buyer | subject to loan approval, which was not granted |  |
| B | 2/17/1994 | escrow opened | 30-7 & 30-11 |  | Goodwin, et. Al sellers | Larson, buyer | uncertain when this was closed. There is a td from La Fe for $80,000 apparently payable to seller. |  |
| E | 2/10/1995 | escrow instructions that title to be vested in Le Fe, Inc. rather than Larson | 30-7 & 30-10 |  |  |  |  |  |

-13-

| Ex. | date | document | parcel | amount paid | From | To | Comments | Notary/ Expiration Date |
|---|---|---|---|---|---|---|---|---|
| 18 | 10/2/2002 | grant deed signed | 30-10 | $100,000 | La Fe | Racada | | Gibson – 3/31/03 |
| 19 | 12/13/2004 | trust deed signed | 30-10 | | Racada | Larson | dated 12/10/04, signed 12/13/04; states that it is part of the purchase price and is for $100,000 | Hjorth – 4/12/07 |
| 18 | 12/20/2004 | grant deed recorded | 30-10 | | | | | |
| 19 | 12/20/2004 | trust deed recorded | 30-10 | | | | | |
| 23 | 1/30/2007 | substitution of trustee signed | 30-10 | | Betancourt | | states she is the present beneficiary of td, but Racada had not yet signed ex. 22 | Dingle – 3/25/10 |
| 22 | 2/9/2007 | assignment of deed of trust signed | 30-10 | | Racada | Betancourt | dated 1/30/07, signed 2/9/07; refers to ex. 19 | Hjorth – 4/12/07 |
| 22 | 2/21/2007 | assignment of deed of trust recorded | 30-10 | | | | | |
| 23 | 2/21/2007 | substitution of trustee recorded | 30-10 | | | | | |
| 28 | 7/23/2008 | trustee's deed on sale signed | 30-10 | $124,131 | trustee | Betancourt | credit bid -no transfer tax paid | |
| 28 | 7/31/2008 | trustee's deed on sale recorded | 30-10 | | | | | |
| 29 | 8/10/2009 | grant deed signed | 30-10 | | Betancourt | Betancourt and Larson | | |
| 29 | 8/10/2009 | grant deed recorded | 30-10 | | | | | |
| | | | | | | | | |
| 17 | 10/2/2002 | grant deed signed | 30-7 | $200,000 | La Fe | Rein | | Gibson – 3/31/03 |
| 17 | 7/22/2004 | grant deed recorded | 30-7 | | | | | |

## CHRONOLOGICAL

| Ex. | date | document | parcel | amount paid | From | To | Comments | Notary |
|---|---|---|---|---|---|---|---|---|
| A | 2/4/1994 | real estate purchase contract | 30-7 & 30-10 | $80,000 | Goodwin, et. Al sellers | Larson, buyer | subject to loan approval, which was not granted | |
| B | 2/17/1994 | escrow opened | 30-7 & 30-11 | | Goodwin, et. Al sellers | Larson, buyer | uncertain when this was closed. There is a td from La Fe for $80,000 apparently payable to seller. | |
| E | 2/10/1995 | escrow instructions that title to be vested in Le Fe, Inc. rather than Larson | 30-7 & 30-10 | | | | | |
| 21 | 3/27/1998 | grant deed signed | 027-029 | $100,000 | La Fe | Larson | does not include 30-7 or 30-10 | Hernandez – 3/3/00 |
| 18 | 10/2/2002 | grant deed signed | 30-10 | $100,000 | La Fe | Racada | | Gibson – 3/31/03 |
| 17 | 10/2/2002 | grant deed signed | 30-7 | $200,000 | La Fe | Rein | | Gibson – 3/31/03 |
| | 10/22/2003 | Ballmer v. Betancourt case filed in the Los Angeles Superior Court | | | | | GC032861 | |
| | 3/10/2004 | case management conference in Superior Court case | | | | | GC032861 | |
| | 6/16/2004 | post-mediation status conference in Superior Court case - mediation to be completed by 6/16/04 | | | | | GC032861 | |
| 17 | 7/22/2004 | grant deed recorded | 30-7 | | | | | |
| | 12/9/2004 | final status conference in Superior Court case | | | | | GC032861 | |
| 19 | 12/13/2004 | trust deed signed | 30-10 | | Racada | Larson | dated 12/10/04, signed 12/13/04; states that it is part of the purchase price and is for $100,000 | Hjorth – 4/12/07 |
| 32 | 12/13/2004 | state court trial | | | | | | |
| 20 | 12/14/2004 | quitclaim deed signed | 027-029 | | Betancourt | Larson | does not include 30-7 or 30-10; is passing bear title and tax collected on deed recording concurrently from La Fe | Gibson – 3/31/07 |
| 20 | 12/20/2004 | quitclaim deed recorded | 027-029 | | | | | |
| 21 | 12/20/2004 | grant deed recorded | 027-029 | | | | | |
| 18 | 12/20/2004 | grant deed recorded | 30-10 | | | | | |

-14-

| Ex. | date | document | parcel | amount paid | From | To | Comments | Notary |
|---|---|---|---|---|---|---|---|---|
| 19 | 12/20/2004 | trust deed recorded | 30-10 | | | | | |
| 32 | 1/28/2005 | judgment filed for $85,626.73 | | | | | | |
| 23 | 1/30/2007 | substitution of trustee signed | 30-10 | | Betancourt | | states she is the present beneficiary of td, but Racada had not yet signed ex. 22 | Dingle – 3/25/10 |
| 22 | 2/9/2007 | assignment of deed of trust signed | 30-10 | | Racada | Betancourt | dated 1/30/07, signed 2/9/07; refers to ex. 19 | Hjorth – 4/12/07 |
| 22 | 2/21/2007 | assignment of deed of trust recorded | 30-10 | | | | | |
| 23 | 2/21/2007 | substitution of trustee recorded | 30-10 | | | | | |
| 24 | 5/7/2007 | grant deed signed | 027-029 | gift | Larson | Betancourt | does not include 30-7 or 30-10 | Dingle – 3/25/10 |
| 24 | 5/10/2007 | grant deed recorded | 027-029 | | | | | |
| 28 | 7/23/2008 | trustee's deed on sale signed | 30-10 | $124,131 | trustee | Betancourt | credit bid -no transfer tax paid | |
| 28 | 7/31/2008 | trustee's deed on sale recorded | 30-10 | | | | | |
| 29 | 8/10/2009 | grant deed signed | 30-10 | | Betancourt | Betancourt and Larson | | |
| 29 | 8/10/2009 | grant deed recorded | 30-10 | | | | | |

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): _ **MEMORANDUM OF OPINION AFTER TRIAL**
_____
was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Derek Tabone
6454 Van Nuys Blvd. #210
Van Nuys, CA 91401

Jeffrey Nadel
16000 Ventura Blvd. Suite 908
Encino, CA 91436

David Hagen – Trustee
5950 Canoga Ave., Suite 400
Woodland Hills, CA 91367

Ana Betancourt
2361 Waring Drive
Agoura, CA 91301

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9021-1.1.NOTICE.ENTERED.ORDER**

page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9021-1.1.NOTICE.ENTERED.ORDER**