**FILED & ENTERED**

**JAN 12 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY Cetulio    DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ana Beatriz Betancourt<br><br>Debtor(s).<br>_____<br>Matthew Ballmer<br><br>Plaintiff(s),<br>v.<br><br>Ana Beatriz Betancourt<br><br>Defendant(s). | CHAPTER 7<br><br>Case No.:  1:10-bk-14588-GM<br>Adv No:   1:12-ap-01221-GM<br><br>**MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT** |

Plaintiff Matthew Ballmer ("Ballmer") moves for a new trial and/or relief from judgment, pursuant to Fed. R. Civ. P. 59 and 60.

Background:

On December 20, 2013, the Court entered its Memorandum of Opinion After Trial

("Memorandum of Opinion") and a Judgment in the above adversary proceeding granting Ballmer a non-dischargeable judgment against Defendant Ana Beatriz Betancourt ("Betancourt" or the "Debtor") in the amount of $75,440.84 plus interest at the federal judgment rate from date of entry of the judgment, pursuant to Bankruptcy Code §523(a)(6) [dkt. 34, 35]. (The plaintiff in this adversary proceeding is Matthew Ballmer, who is the son and assignee of Paul Ballmer, who obtained the original judgment for breach of contract against Betancourt. For simplicity, Paul Ballmer and Matthew Ballmer are referred to collectively herein as "Ballmer.") In essence, the Memorandum of Opinion found that Ms. Betancourt had willfully and maliciously injured Ballmer by transferring away property of La Fe, Betancourt's wholly-owned company, after it had become clear that Ballmer would obtain a judgment against La Fe but before that judgment was entered.

Betancourt appealed and on June 3, 2015 the Bankruptcy Appellate Panel vacated and remanded [BAP No. CC-14-1010-KiKuDa, dkt. 26; adv. dkt. 48; (the "BAP Decision")]. The BAP Decision concluded that "further findings are required before a proper determination of nondischargeability under §523(a)(6) can be made" [BAP Decision at 22:13-15] and asked for the following findings:

1. Whether the Debtor's state of mind - measured under a *subjective* standard - was "willful" within the meaning of §523(a)(6).

2. Whether there was an injury to Ballmer or his property. If the injury was to Ballmer, there must be a finding that the Debtor's act gave rise to a legally cognizable claim that would result in a monetary judgment. If the injury was to property, there has to be a finding that Ballmer had an interest in the property that was transferred.

3. Whether there was a proper debt to be deemed nondischargeable under §523(a)(6). The BAP Decision noted that it was not clear from the record whether this Court was terming Ballmer's underlying breach of contract judgment nondischargeable or was finding a new liability arising out of the Debtor's willful and malicious conduct.

Thereafter, this Court held a status conference at which it was decided that the Court should review the transcript of the original trial and that the parties could put on additional evidence at a supplemental trial.  Ms. Betancourt was the only witness to testify at the new trial held on December 15, 2015 and no new evidentiary exhibits were proffered.  At the conclusion of the hearing, each counsel was given an opportunity to submit a post-trial brief and each did so, with Ballmer also submitting a supplemental post-trial brief [dkt. 52, 53, 56].

Having considered the evidence provided to that time, the Court ordered that the parties provide further evidence:

> In preparing a thorough analysis in light of the instructions of the Bankruptcy Appellate Panel, the Court finds that it needs to include findings on the viability of a fraudulent transfer cause of action, which includes a determination of compliance with the statute of limitations for pursuing such a claim. The record does not contain evidence as to the time of Ballmer's discovery of the transfers.  The unverified complaint commencing this proceeding does allege that neither Ballmer was aware of the conveyances of the properties until July 2011 when Matthew Ballmer began to investigate collecting on the judgment [dkt. 1 at ¶14].
> Beyond actual discovery of the transfer, neither party addressed when it would have been reasonable to discover the transfers.
> While it is unusual to request further evidence after the close of trial, this is an unusual case.  For that reason, the Court wishes further evidence on the question of "what actions did either of the Ballmers take to collect on the judgment prior to the filing of the bankruptcy case."  This includes any formal or informal analysis of assets as well as any other actions taken.  If no actions were taken, please explain the delay.  This must be in an evidentiarily admissible form.
> The parties will have a period of time to do discovery and present evidence of the date(s) when either of the Ballmers or their agents did or should reasonably have discovered the transfers.  This can be by way of declaration,

interrogatory, deposition, or other evidence.  The Court will review the evidence and determine whether a further evidentiary hearing is required.

["Order to Provide More Evidence"; Dkt. 57 at 3:15-4:11.]  A discovery schedule was then set forth [dkt. 57].  In compliance therewith, Paul Ballmer's declaration was filed, as was further evidence by Ana Betancourt and finally a supplemental reply by Ballmer to the Betancourt evidence [dkt. 59, 60, 61, 63].

Having reviewed the evidence submitted by the parties, on September 22, 2016 the Court issued a Memorandum of Opinion Regarding Judgment Upon Remand (the "Memorandum on Remand") that determined that (i) the Debtor did subjectively intend to injure Ballmer, (ii) Ballmer had been injured by the transfers because they gave rise to a legally cognizable claim by Ballmer, but that claim is now barred by the statute of limitations, and (iii) but for the statute of limitations, the transfers would have given rise to a new, independent debt based on fraudulent transfer law [dkt. 65]. However, the Court concluded that the Ballmer claim was barred by the statute of limitations because Ballmer – who carried the burden of proof on the issue – failed to establish that Matthew Ballmer had not discovered the transfers prior to April 2009.  The Court accordingly entered Judgment in favor of Betancourt on September 22, 2016 [dkt. 66].

On October 6, 2016, Ballmer filed this motion for a new trial and/or relief from the Judgment [dkt. 69].  Betancourt has filed an opposition [dkt. 70] and Ballmer has filed a reply to that opposition [dkt. 71].

Motion – Ballmer argues as follows:

Matthew had no knowledge of the transfers prior to July 2011. His failure to submit a declaration on this point was a result of misunderstanding of what the Order to Provide More Evidence requested.  Matthew Ballmer failed to provide a declaration, not

because he had something to hide, but rather because he had no independent admissible evidence.  Relief should be granted under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 59 **New Trial; Altering or Amending a Judgment** (applicable through Fed. R. Bankr. P. 9023) provides that:

> (a) **In General**
> (1) **Grounds** The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .
> (2) **Further Action After a Nonjury Trial**. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

Fed. R. Civ. P. 59.  Rule 59 grants a trial judge "substantial authority to grant new trials in the interests of justice." *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).  The International Court of Trade has held:

> The court will grant a rehearing "only in limited circumstances," such as for "1) an error or irregularity, 2) a serious evidentiary flaw, 3) the discovery of new evidence which even a diligent party could not have discovered in time, or 4) an accident, unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case."

*AD HOC Utilities Grp. v. United States*, 33 C.I.T. 1284, 1289–90 (2009).

Fed. R. Civ. P. 60 **Relief from a Judgment or Order** (applicable through Fed. R. Bankr. P. 9024) provides that:

> (a) **Corrections Based on Clerical Mistakes; Oversights and Omissions.** The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;

>   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>   (4) the judgment is void;
>   (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>   (6) any other reason that justifies relief.

Fed. R. Civ. P. 60. Motions under Rule 60 are "addressed to the sound discretion" of the court. *Martella v. Marine Cooks & Stewards Union, Seafarers Int'l Union of N. Am., AFL-CIO*, 448 F.2d 729, 730 (9th Cir. 1971). The "other reason" clause "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601 (1949). This is consistent with one of the grounds for relief under Rule 59: to "prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Ballmer prevailed on all issues except for proof that he (Matthew Ballmer) was unaware of any transfers of La Fe assets prior to 2010 or 2011. Matthew Ballmer was unaware of the Transfers prior to that time, but Ballmer provided evidence of only Paul Ballmer's mental state due to the wording of the Order to Provide More Evidence and Ballmer's counsel's misunderstanding of that order. Ballmer provided only evidence of what was affirmatively done by Paul to enforce the original judgment and why there was a delay. This mistake has resulted in a miscarriage of justice and relief is appropriate under Rule 59 and/or 60.

Ballmer also provided (i) a declaration of counsel explaining his misunderstanding of the Order to Provide more evidence and (ii) a declaration of Matthew Ballmer stating, among other things, that he learned of the Transfers from his father sometime after July 2011.

-6-

<u>Opposition</u> - The Opposition begins by quoting portions of the B.A.P. Decision remanding this proceeding and this Court's Order to Provide More Evidence and then argues as follows:

Ninth Circuit precedent provides that a motion for reconsideration must (i) demonstrate some reason why a court should reconsider its prior decision and (ii) set forth strongly convincing facts or law to induce the court to reverse its prior decision. Courts have distilled this to three major grounds justifying reconsideration: intervening change in controlling law, new evidence, or need to correct clear error or prevent manifest injustice. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc*., 5 F.3d 1255 (9th Cir. 1993).

This case is very plain: the BAP required further evidence on clearly delineated issues, a clear set of issues were expressed by this Court prior to the second trial, and after the second trial this Court noted that it was unusual to request further evidence after a trial but nonetheless made a *detailed* request for further evidence.

Rule 59(e) may not be used to raise arguments or present evidence that could have reasonably been raised earlier in the litigation. *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003); *Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000); *Defs. of Wildlife v. Bernal*, 204 F.3d 920 (9th Cir. 2000).

The Opposition attaches a lengthy declaration from Ms. Betancourt testifying on the facts underlying this proceeding. *[Note from the Court: the facts set forth in this declaration appear to be irrelevant to the single issue presented in this motion for reconsideration.]*

Reply – Ballmer argues as follows:

Betancourt misstates the law in the Opposition. *Sch. Dist. No. 1* also includes the statement that "there also may be other, highly unusual, circumstances warranting reconsideration." Plaintiff believes this is just such a case. It did not occur to the Plaintiff's counsel that one of the issues was whether Matthew discovered the property transfers before Paul did, yet the failure to provide evidence on that specific point is what led to judgment in favor of Betancourt. Having obtained judgment once based on evidence that consisted largely of a declaration by Paul, counsel believed that it was clear that Paul had all the relevant information regarding what was learned and when it was learned and thus Matthew did not need to further explain (as he learned the information only through his father).

The cases cited in the Opposition do not compel denial of Ballmer's motion. In each of *Carrol*, *Zimmerman*, and *Defenders of Wildlife*, the court noted that the new evidence or argument would not have affected the outcome. Unlike those cases, Ballmer has an excuse for failing to provide the information sooner. Several cases note the discretion the trial court has on motions for reconsideration.

Analysis

Reconsideration under Fed. R. Civ. P. 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)(quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed.2000); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)(same).

Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.

*Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted); *see also Carroll,* 342 F.3d at 945; *Kona Enterprises*, 229 F.3d at 890. Ballmer is not asserting newly discovered evidence, clear error or manifest injustice in the Court's ruling, or an intervening change in law.

As Ballmer notes, these decisions do leave open the possibility that other "highly unusual circumstances" may warrant reconsideration. *Sch. Dist. No. 1*, 5 F.3d at 1263; *Kona Enterprises,* 229 F.3d at 890. However, Ballmer has not provided the Court with precedent that would support a holding that the instant facts constitute such highly unusual circumstances. Given the Ninth Circuit's repeated caution that reconsideration under Rule 59(e) is an extraordinary remedy to be used sparingly, the Court is reluctant - without more specific precedent - to conclude that these are the highly unusual circumstances that justify relief under Rule 59(e)

Relief from judgment under Fed. R. Civ. P. 60(b)(1) on the grounds of excusable neglect provides a stronger basis for relief as it includes the possibility of attorney error as grounds for relief:

> Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,* 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and includes "omissions caused by carelessness," *id.* at 388, 113 S.Ct. 1489. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. To determine when neglect is excusable, we conduct the equitable analysis specified in Pioneer by examining "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223–24 (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489). Although *Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir.1997), we concluded that the *Pioneer* standard

governs analysis of excusable neglect under Rule 60(b)(1). *See id*. at 381, 113 S. Ct. 1489.

*Lemoge v. United States,* 587 F.3d 1188, 1192 (9th Cir. 2009). The Court must consider each of the *Pioneer/Briones* factors, although the factors must be adjusted to reflect the fact that the neglect in this case is not a missed deadline, but the failure to submit evidence.

**Prejudice to Betancourt:** Reconsideration of the Memorandum on Remand and the Judgment will be at some cost to Betancourt: she will now have a monetary judgment entered against her. However, it is difficult to term that cost prejudicial, as she had previously escaped liability only upon a technicality.

**Length of Delay and Potential Impact on Proceedings**: Ballmer's attorney noted his misunderstanding and timely filed his motion for relief from the Judgment within two weeks of the entry of the Judgment. The delay to this proceeding occasioned by this motion would be approximately four months. It appears to have no other impact on these proceedings.

**Reason for Delay** (or in this case failure to submit evidence of Matthew Ballmer's knowledge): Ballmer failed to introduce any evidence as to Matthew's lack of knowledge of the Transfers because Ballmer's attorney misunderstood what the Order to Provide More Evidence requested. While this order does repeatedly refer to actual knowledge by the Ballmers (as well as when it would have been reasonable to discover the Transfers), it states the formal request for more information as: "For that reason, the Court wishes further evidence on the question of 'what actions did either of the Ballmers take to collect on the judgment prior to the filing of the bankruptcy case.'" This formal request does not refer to Ballmer's knowledge. Thus, while a careful reading of this order should have resulted in evidence being provided as to both Ballmers'

knowledge of the Transfers, counsel's decision to provide only evidence of what was affirmatively done by Paul to enforce the original judgment and why there was a delay was not wholly unreasonable. The fact that Paul had been handling the matter and had received almost all of the Ballmer's direct knowledge underscores this conclusion.

In fact, the ambiguity in the Order to Provide More Evidence is quite similar to the ambiguity in a court notice that made counsel's failure to meet a bar date "excusable" under Fed. R. Bank. P. 9006(b) in *Pioneer*:

> We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. *Ibid.*[15] This is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

*Pioneer*, 507 U.S. at 398–99.

**Good faith**: There is nothing in the record to suggest a lack of good faith on the part of the Ballmers or their counsel. Indeed, given the ease of submitting evidence as to Matthew's lack of knowledge and the high cost of not submitting that evidence, inadvertence appears to be the only rational explanation for their failure to do so.

For these reasons, the Court concludes that the Ballmer's failure to provide evidence of Matthew's lack of knowledge of the Transfers does constitute excusable neglect under Fed, R. Civ. P. 60(b)(1).

Conclusion

Ballmer's failure to submit evidence of Matthew's lack of knowledge of the

-11-

Transfers is "excusable neglect" under Fed. R. Civ. P. 60(b)(1) and the Court grants the motion for relief from the Judgment. Ballmer has submitted the requisite evidence that he did not have knowledge of the Transfers prior to April 2009. The Court will amend the Judgment accordingly.

///

Date: January 12, 2017

_____
Geraldine Mund
United States Bankruptcy Judge